UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SANDREA J. RIGSBY,

                 Plaintiff,

     v.

HYUNDAI MOTORS d/b/a HYUNDAI
MOTOR AMERICA,

                 Defendant.

_____

**DECISION AND ORDER**

6:22-CV-06218 EAW

## INTRODUCTION

Plaintiff Sandrea J. Rigsby ("Plaintiff"), proceeding *pro se*, brings this action against Defendant Hyundai Motors d/b/a Hyundai Motor America ("Defendant"), asserting claims for personal injury and products liability. (Dkt. 1-1). Pending before the Court is Defendant's motion to enforce a settlement agreement between Plaintiff and Defendant, and to dismiss the action. (Dkt. 38). For the reasons set forth below, Defendant's motion is granted, and the case is dismissed.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff commenced this action against Defendant on April 14, 2022, in New York State Supreme Court, Monroe County. (Dkt. 1-1). Defendant removed the case to federal court based on diversity jurisdiction on May 17, 2022 (Dkt. 1), and filed an answer on May 31, 2022 (Dkt. 3). Thereafter, Plaintiff filed a motion to remand the case to state court (Dkt. 8), which the Court denied on October 24, 2022 (Dkt. 14). The case proceeded to discovery before former United States Magistrate Judge Marian W. Payson. (*See* Dkt. 7).

The parties engaged in mediation on March 1, 2023, but no settlement was reached at that time.  (Dkt. 24).  After two extensions of the scheduling order due to Plaintiff's failure to participate in discovery (*see, e.g.*, Dkt. 25 through Dkt. 30), Plaintiff agreed to appear for a deposition on December 11, 2023 (Dkt. 31).  As a result of additional negotiations, when Plaintiff appeared for her deposition on December 11, 2023, the parties placed a settlement on the record, with a court reporter present.  (Dkt. 38-1 at ¶ 11; *see also* Dkt. 38-2 (transcript placing stipulation of settlement on the record)).  Defendant informed Judge Payson of the settlement by email the same day.  (Dkt. 38-1 at ¶ 12; Dkt. 38-3). Plaintiff also emailed a letter to the Court dated December 14, 2023, acknowledging the settlement, and requesting that the court issue an order expediting her receipt of the settlement funds.  (Dkt. 38-1 at ¶ 13; Dkt. 38-4).

Plaintiff executed a "Confidential General Release and Settlement Agreement" before a notary public on December 12, 2023, which fully and unconditionally released Defendant and its related entities from the matters of the subject litigation.  (Dkt. 38-1 at ¶ 14; Dkt. 38-5).  On December 18, 2023, the settlement check was sent by Defendant via Federal Express ("FedEx") standard overnight delivery, and FedEx confirmed delivery on December 19, 2023, at 1:48 p.m. EST.  (Dkt. 38-1 at ¶ 15; Dkt. 38-6).  Plaintiff cashed the settlement check on December 20, 2023.  (Dkt. 38-1 at ¶ 16).

Thereafter, Plaintiff failed to sign a stipulation of discontinuance.  On December 15, 2023, defense counsel provided Plaintiff by email a stipulation of discontinuance for her execution.  (Dkt. 38-1 at ¶ 17; *see also* Dkt. 38-7).  On December 18, 2023, defense counsel again emailed Plaintiff, advising her that she was required to sign the stipulation of

discontinuance, and that he would not file the stipulation until after she received the settlement check. (Dkt. 38-1 at ¶ 18; Dkt. 38-8 at 3). Plaintiff responded, "I will look for it in the mail." (Dkt. 38-8 at 2). Thereafter, on January 16, 2024, as the stipulation had not yet been filed, the court reached out to counsel and Plaintiff via email inquiring as to when the stipulation would be filed, to which Plaintiff answered, "[p]aperwork will be sent and filed this week." (*Id*. at 1-2). On January 19, 2024, Plaintiff again emailed the court, stating that the paperwork would be filed before the end of the next week. (*Id*. at 1). However, Plaintiff did not execute and return the stipulation of dismissal.

Thereafter, the court contacted the parties to inquire when it could expect the stipulation of dismissal to be filed. (*See* Dkt. 38-1 at ¶ 20; *see also* Dkt. 38-9). For example, the court emailed counsel on July 16, 2024, asking that the parties advise the court of the status of the matter by July 19, 2024. (Dkt. 38-9 at 2-3). Plaintiff responded on July 19, stating that she planned to file a "writ of cert" for the case, but that she needed additional time until August 9, 2024. (*Id*. at 2). On August 9, 2024, Plaintiff emailed the court, advising that she would need until August 30, 2024, to file her paperwork. (*Id*. at 1).

On September 11, 2024, because the deadline for filing dispositive motions had passed and the case had not been discontinued, the undersigned set a telephone trial date status conference for October 8, 2024. (Dkt. 34). At the conference, defense counsel advised the Court that the parties had entered into a settlement agreement, but that Plaintiff had not signed the stipulation of discontinuance. (Dkt. 37 at 4-5). Plaintiff agreed that she had taken the settlement and accepted payment from Defendant, but that she now felt that

she had been taken advantage of and was not treated fairly.  (*Id*. at 5-6).  The Court set a deadline of October 18, 2024, for Defendant to file a motion seeking to enforce the settlement agreement.  (*Id*. at 11-12).

Defendant filed the motion to enforce the settlement on October 18, 2024.  (Dkt. 38).  The Court set a scheduling order on the motion, with responses due by November 1, 2024, and replies due by November 8, 2024.  (Dkt. 39).  Plaintiff did not file a response by the November 1 deadline, but she subsequently requested an extension of time, which the Court granted, and extended her time to file a response until November 21, 2024.  (Dkt. 42; *see also* Dkt. 40).  Plaintiff filed a response on November 13, 2024 (Dkt. 43), and Defendant filed a reply on December 2, 2024 (Dkt. 44).  Thereafter, on December 5, 2024, Plaintiff filed an "addendum" to her response papers (Dkt. 45), and she also filed an unauthorized sur-reply on December 16, 2024 (Dkt. 46).

## DISCUSSION

Defendant argues that the Court should enter an order enforcing the settlement agreement because Plaintiff agreed to a settlement of this matter, executed a notarized release for all claims, and accepted and cashed a settlement check, but has refused to execute the required dismissal papers.  (Dkt. 38-11 at 2).  In response, Plaintiff contends that Defendant is in default because it failed to file a timely answer, and she asks that default be granted immediately.  (Dkt. 43; Dkt. 45; Dkt. 46).

"An agreement to end a lawsuit is construed according to contract principles," and "[t]he meeting of minds is an issue to be determined by examination of the totality of the circumstances."  *United States v. Sforza*, 326 F.3d 107, 115-16 (2d Cir. 2003).  "Once

reached, a settlement agreement constitutes a contract that is binding and conclusive and the parties are bound to the terms of the contract even if a party has a change of heart between the time of the agreement to the terms of the settlement and the time it is reduced to writing." *Elliott v. City of N.Y.*, No. 11 Civ. 7291, 2012 WL 3854892, at *2 (S.D.N.Y. Sept. 5, 2012) (citation and alteration omitted); *see also United States v. Bank of N.Y.*, 14 F.3d 756, 759 (2d Cir. 1994) ("When a party makes a deliberate, strategic choice to settle, she cannot be relieved of such a choice merely because her assessment of the consequences was incorrect."); *U.S. Fire Ins. Co. v. Pierson & Smith, Inc.*, No. 06 Civ. 382(CM)(LMS), 2007 WL 4403545, at *3 (S.D.N.Y. Dec. 17, 2007) ("Where a party has entered into an oral agreement to settle, the party cannot avoid the settlement by refusing to sign the papers that would memorialize the terms of the agreement that were reported to the court.").

A trial court possesses inherent authority to enforce a settlement agreement. *Omega Eng'g, Inc. v. Omega, S.A.*, 432 F.3d 437, 444 (2d Cir. 2005); *see also Sprint Commc'ns, Co. L.P. v. Jasco Trading, Inc.*, 5 F. Supp. 3d 323, 330 (E.D.N.Y. 2014) (district court "has the power to enforce a settlement agreement reached in a case pending before it. . . ." (citation omitted)). "The existence of such a settlement agreement is recognized where there is a recitation of the specific terms of an agreement into the record, and where both parties expressly assent to the agreement." *Id*. "A party seeking to enforce a purported settlement agreement has the burden of proof to demonstrate that the parties actually entered into such an agreement." *Cornelius v. Indep. Health Ass'n, Inc.*, 912 F. Supp. 2d 26, 30 (W.D.N.Y. 2012) (quoting *Benicorp Ins. Co. v. Nat'l Med. Health Card Sys., Inc.*, 447 F. Supp. 2d 329, 335 (S.D.N.Y. 2006)).

Regardless of whether the underlying litigation arises under federal or state law, in determining whether the parties have agreed to be bound, "there is no material difference between the applicable state law or federal common law standard. . . ." *Ciaramella v. Reader's Digest Ass'n, Inc.*, 131 F.3d 320, 322 (2d Cir. 1997) (declining to resolve question of whether New York or federal common law governs the potential settlement of claims arising under federal and state law); *Junjiang Ji v. Jling Inc.*, No. 15-CV-4194 (SIL), 2019 WL 1441130, at *7 n.1 (E.D.N.Y. Mar. 31, 2019) (noting Second Circuit has not ruled as to application of federal or state law, but that federal common law and New York law are "materially indistinguishable"), *appeal dismissed*, 799 F. App'x 77 (2d Cir. Apr. 2, 2020).

Here, the record is clear that Plaintiff and Defendant entered into a settlement agreement—which was both placed on the record and reduced to writing—and the parties had a mutual understanding that the case had settled. The relevant terms of the settlement were placed on the record when the parties appeared for the planned deposition on December 11, 2023. Specifically, the parties agreed to settle the case for $25,000, which resolved all the disputes and claims in the case, subject to defense counsel and Plaintiff finalizing the terms of a release. (Dkt. 38-2 at 3). Plaintiff agreed on the record that those terms were a fair and accurate representation of the settlement, and she also specified that she wanted payment in a timely manner. (*Id.*). The day after the settlement was placed on the record, Plaintiff executed a "Confidential General Release and Settlement Agreement" before a notary public on December 12, 2023, which included the terms of the settlement, including the settlement amount, and fully and unconditionally released Defendant and its

related entities from the matters of the subject litigation.  (Dkt. 38-1 at ¶ 14; Dkt. 38-5).  As part of the release, Plaintiff agreed that she had carefully read the release and agreement, she knew and understood the terms of the agreement, and she signed the agreement of her own free will.  (Dkt. 38-5 at 2).  The parties reported to the court that the case had settled.  (Dkt. 38-1 at ¶¶ 12-13; Dkt. 38-3; Dkt. 38-4).  Plaintiff received the settlement check on December 19, 2023—eight days after the settlement was memorialized on the record—and she cashed the check one day later.  (Dkt. 38-1 at ¶¶ 15-16; Dkt. 38-6).

At the telephone appearance before the undersigned on October 8, 2024, Plaintiff stated that she felt "coerced" into signing the settlement agreement, and also that she was "really taken advantage of."  (Dkt. 37 at 5-6).  However, the record before the Court does not support that Plaintiff was "coerced" into signing the settlement agreement.  For example, the settlement was the product of negotiations between the parties and was placed on the record.  Plaintiff signed a release, in which she represented that she understood the agreement and signed it of her own free will.  Thereafter, Plaintiff represented to the court that she was working on getting her paperwork finalized and gave the court dates by which to expect to receive the paperwork—all of which supports that Plaintiff intended to enter into a settlement with Defendant and understood the terms of her doing so.  At the October 8 conference, Plaintiff claimed that she was "coerced" into signing the settlement agreement.  However, as explained above, a "change of heart" does not render the agreement unenforceable.  *Elliott*, 2012 WL 3854892, at *2; *see also Wright v. Eastman Kodak Co.*, 445 F. Supp. 2d 314, 317-18 (W.D.N.Y. 2006) (that the plaintiffs "believe[d] that they should have held out for more," was "not a legitimate basis to set aside an

otherwise valid release"); *Sea-Land Serv., Inc. v. Sellan*, 64 F. Supp. 2d 1255, 1260 (S.D. Fla. 1999) ("second thoughts are not a reason for voiding an agreement that was proper and valid when the parties concluded it"), *aff'd*, 231 F.3d 848 (11th Cir. 2000). Accordingly, the Court declines to nullify the settlement agreement on this basis.

Finally, Plaintiff argues that she should have been granted a default judgment, arguing that Defendant did not answer the complaint within 20 days of her filing the summons and complaint in state court, and instead moved to remove the case to federal court. (*See, e.g.*, Dkt. 43 at 1; *see also* Dkt. 45; Dkt. 46). Plaintiff did not move for default in this case, despite being advised by Judge Payson that she could move for such relief in November 2023. (*See* Dkt. 32 at 1-2). Plaintiff also failed to properly move for such relief in state court (*see* Dkt. 44 at ¶¶ 11-12; Dkt. 44-4; Dkt. 44-7), before the action was timely removed to federal court (Dkt. 1; Dkt. 14). Even putting these procedural deficiencies with the motion for default aside, as explained above, Plaintiff agreed to the settlement of her case, signed release paperwork, and then received and took payment of the settlement funds from Defendant. The fact that Plaintiff has changed her mind about further pursuing a particular legal argument is not a basis for setting aside the settlement agreement.

In sum, the record before the Court supports enforcement of the settlement agreement between Plaintiff and Defendant. *See, e.g., Tarantelli-Benjamin v. Ethicon, Inc.*, No. 14-CV-6386DGL, 2024 WL 896927, at *1 (W.D.N.Y. Mar. 1, 2024) (granting motion to enforce settlement agreement, where the parties reported to the court that the case had settled, they agreed on the terms of the settlement, and defendants tendered the agreed-upon payment, and plaintiff failed to articulate that the document was in any way

inaccurate or inconsistent with the parties' mutual understanding that the case had settled).

Accordingly, Defendant's motion to enforce the settlement (Dkt. 38) is granted.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendant's motion to enforce the settlement (Dkt. 38)

is granted, and the case is dismissed.  The Clerk of Court is directed to close the case.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:  April 30, 2025
         Rochester, New York